CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 27 2010

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 5:07cr00058 |
| ) | |
| Respondent, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| ROCKY MOUNTAIN CORPORATION, ) | By: Samuel G. Wilson |
| ) | United States District Judge |
| Petitioner. ) | |

This is a petition for writ of coram nobis by petitioner, Rocky Mountain Corporation ("Rocky Mountain"), challenging the validity of its guilty plea pursuant to a written plea agreement to conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1) and a resulting fine of $1,415,640 and a forfeiture judgment, for which it and three of its co-defendants were jointly and severally liable, in the amount of $2,000,000. Rocky Mountain maintains that its plea was not a knowing and voluntary plea because of the pressure the government placed on its president, that the fine and forfeiture the court imposed exceeded the amount authorized by controlling statutes and were constitutionally excessive, and that it received ineffective assistance of counsel. The court finds that Rocky Mountain knowingly and voluntarily waived its right to collaterally attack its plea and sentence and that all of its claims are within the scope of that waiver, and the court dismisses them on that ground. The court also finds that all of Rocky Mountains's claims are meritless. Accordingly, the court dismisses Rocky Mountain's petition.

I.

A grand jury of the Western District of Virginia returned a multiple count, superseding

indictment charging five members of a family (Vern Odell Crawford, his wife Joyce Marie Crawford, their two sons, Kenneth Odell Crawford, and Darrell Wayne Crawford, and Darrell's wife, Melissa Ann Crawford) with conspiring to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846, possessing firearms in furtherance of that offense, in violation of 18 U.S.C. § 924(c) and with various other drug trafficking offenses. Melissa Crawford pled guilty to the drug conspiracy, and the other defendants pled not guilty and went to trial. The court granted Darrell Crawford's motion for judgment of acquittal as to the firearm charge. The jury acquitted the remaining defendants of that charge, was unable reach a verdict as to the drug conspiracy charge, and found Vern Odell Crawford guilty of 15 drug trafficking charges.

The court declared a mistrial and rescheduled the unresolved charges for retrial. In the meantime the grand jury returned a second superseding indictment against all the defendants from the first trial and added Rocky Mountain, as an additional defendant. Rocky Mountain is wholly owned by Joyce and Kenneth, who are also its secretary and president. The new indictment re-alleged the unresolved drug conspiracy against the individual defendants, added a drug distribution charge against Joyce, a money-laundering conspiracy in violation of 18 U.S.C. § 1956(h) against Vern, Joyce, Kenneth and Rocky Mountain, four structuring counts against Vern and Joyce for violations of 31 U.S.C. § 5313(a), and a notice of forfeiture count.

The Government elected not to proceed with the new charges against Vern, and entered into plea agreements with Kenneth, Joyce, Darrell, and Rocky Mountain. Each of those four defendants also agreed to a statement of facts. The statement of facts detailed a considerable methamphetamine conspiracy, as well as a conspiracy to structure financial transactions and

2

launder the proceeds of the methamphetamine conspiracy through Rocky Mountain and other entities. According to that agreed-upon statement of facts, "Rocky Mountain Corporation was created and maintained to launder the illegal proceeds from the sale of methamphetamine." The statement of facts also noted that from 2003 to 2007 alone, the defendants' deposits into various bank accounts and their other financial transactions exceeded their income from legitimate identifiable sources by more than $707,820.

Each of the defendants entered into a written plea agreement. Kenneth, Joyce, and Rocky Mountain each agreed to plead guilty to count three of the second superseding indictment which charged a conspiracy to launder money in various ways, and Darrell agreed to plead guilty to a lesser included offense of the drug conspiracy alleged in count one. Each agreement provided that if any defendant failed to plead guilty, the government had the right to void the agreement. The agreements also stated that the defendant waived the right to appeal and to collaterally attack the plea and sentence. The agreements also called for a joint and several forfeiture monetary judgment in the amount of $2,000,000, to be satisfied from the real estate listed as substitute assets in the second superseding indictment which they agreed was "proportionate to the degree and nature of the offense." The agreements also stated that the defendants specifically waived any challenge to the forfeiture amount. Kenneth's plea agreement was entered pursuant to Federal Rule of Criminal Procedure ("Rule") 11(c)(1)(C), and in addition to the forfeiture, specifically called for Kenneth to serve 60 months imprisonment and pay a fine of $225,000.

Joyce and Kenneth, as the sole shareholders of Rocky Mountain, signed a written authorization for Kenneth, as president of Rocky Mountain, "to enter into any plea agreement or agreed disposition with the United States Government [in the case] as he [deemed] appropriate

and in the best interest of the corporation." The authorization provided further that Kenneth was "allowed to direct each and every action of A. Gene Hart, Jr., attorney for Rocky Mountain . . . with regard to [the case], to include without limitation directing that [Hart] endorse any plea agreement or agreed disposition with United States Government . . . ."

In addition to the appellate and collateral attack waivers[1] and the joint and several forfeiture monetary judgment in the amount of $2,000,000, Rocky Mountain's plea agreement provided that the court was free to "sentence Rocky Mountain up to the statutory maximum." It expressly noted that the court could fine Rocky Mountain "$500,000 or twice the amount of the criminally derived property." Rocky Mountain agreed that it was pleading guilty because it was, in fact, guilty. Further, Rocky Mountain acknowledged that it was fully satisfied with Rocky Mountain's attorney and the advice that Rocky Mountain's attorney had given, and it expressly agreed "to make known to the court no later than at the time of sentencing any dissatisfaction or complaint Rocky Mountain may have had with its attorney's representation." The agreement concluded:

> Rocky Mountain has consulted with its attorney and fully understands all its rights. Rocky Mountain has reviewed every part of it with its attorney. Rocky Mountain understands this agreement and Rocky Mountain voluntarily agrees to it. Rocky Mountain has not been coerced, threatened, or promised anything other than the terms of this plea agreement, described above, in exchange for its plea of guilty.

---

[1] Rocky Mountain's collateral attack waiver provides:
> Rocky Mountain waives any right Rocky Mountain may have to collaterally attack, in any future proceeding, any order issued in this matter and agrees Rocky Mountain will not file any document which seeks to disturb any such order. **Rocky Mountain agrees and understands if Rocky Mountain files any court document seeking to disturb, in any way, any order imposed in this case, such action shall constitute a failure to comply with a provision of this agreement.**

(Emphasis in original).

4

> Being aware of all of the possible consequences of its plea, Rocky Mountain has independently decided to enter this plea, and is affirming that agreement on this date by the signature of its representative below.

Kenneth then signed Rocky Mountain's proposed agreement, the day before its plea, indicating his and Rocky Mountain's acceptance.

The next day Rocky Mountain, Kenneth, Joyce, and Darrell pled guilty in the same proceeding pursuant to their respective plea agreements. Gene Hart, Rocky Mountain's counsel, responded on Rocky Mountain's behalf to the court's questioning under Rule 11, as permitted by Rule 43(b)(1). The terms of Rocky Mountain's agreement were fully detailed in open court, as were the terms of the other defendants' agreements. The defendants denied under oath that anyone had forced them to plead guilty or had threatened them in any way. In fact, the court asked Kenneth at least five times whether anyone had threatened him or forced him to plead guilty, and each time he indicated that he had not been threatened or coerced. The court fully explored with the defendants the possible penalties provided by law as well as their appellate and collateral attack waivers. After an exhaustive inquiry, the court made the factual finding that each defendant's plea was a knowing and voluntary plea supported by an independent basis in fact. Accordingly the court accepted each plea.

Several months later, the court sentenced the Crawfords and Rocky Mountain. It sentenced Vern to 360 months and a fine of $1,000,000; Kenneth to 60 months, a fine of $225,000, and a joint and several forfeiture judgment of $2,000,000; Joyce to time served, a fine of $225,000, and a joint and several forfeiture judgment of $2,000,000; Darrell to 36 months and six days (70 months, with 333 months and 24 days credited for a discharged term of imprisonment pursuant to United States Sentencing Guideline § 5K 2.23) and a joint and several

forfeiture judgment of $2,000,000; and Rocky Mountain to a fine of $1,415,640 and a joint and several forfeiture judgment of $2,000,000.

Only Vern appealed, and his appeal is pending in the Court of Appeals. However, Kenneth filed a motion pursuant to 28 U.S.C. § 2255 alleging that his plea was not knowing and voluntary, that he was convicted upon insufficient evidence, that the prosecutor engaged in misconduct, and that counsel provided ineffective assistance on multiple grounds. The court found that Kenneth's plea was knowing and voluntary and that his remaining claims were procedurally barred or waived by his plea agreement. Accordingly, the court denied his motion, and an appeal from that decision is also pending in the Court of Appeals.[2] Finally, in direct contravention of its agreement not to collaterally attack its plea and sentence, 15 months after the court sentenced it, Rocky Mountain filed its current petition for writ of coram nobis doing precisely that.

## II.

Rocky Mountain maintains that its "guilty plea was unknowing and involuntary due to the duress exercised over [Kenneth] the corporate representative."[3] (Pet. 13.) It maintains that, as a

---

[2] Kenneth Crawford maintained, in part, that counsel provided ineffective assistance in failing to file an appeal upon his request. The government moved to dismiss and the court found that it was unable to resolve Kenneth's claim that counsel was ineffective in failing to file an appeal without an evidentiary hearing. The court set an evidentiary hearing for February 25, 2010, and on February 24, 2010, Kenneth's retained counsel filed a "notice of partial withdrawal of claim and request to cancel hearing." The court declined to dismiss the claim until it received an affidavit from Kenneth affirming that he had fully discussed the matter with his counsel and that he was knowingly and voluntarily withdrawing the claim. He filed the affidavit the court required on February 26, 2010, and the court canceled the evidentiary hearing and dismissed the claim.

[3] Though the court indirectly analyzes the argument through the lens of Rocky Mountain's collateral attack waiver, Rocky Mountain procedurally defaulted the claim because

consequence, the Government is precluded from enforcing its collateral attack waiver. At the time the court conducted its Rule 11 colloquy and accepted Rocky Mountain's plea, however, the court found, as a matter of fact, that Rocky Mountain's plea was a knowing and voluntary plea supported by an independent basis in fact. Nothing Rocky Mountain has marshaled disturbs that finding. Because the court finds that Rocky Mountain knowingly and voluntarily pled guilty and waived its right to collaterally attack its plea and sentence, the court dismisses Rocky Mountain's petition.

As part of a plea agreement, "a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). "When deciding whether an evidentiary hearing is necessary to resolve a § 2255 motion contesting a guilty plea, first "a court must determine 'whether the petitioner's allegations, when viewed against the record of the Rule 11 plea hearing, were so palpably incredible, so patently frivolous or false as to warrant summary dismissal.'" Id. (quoting United States v. White, 366 F.3d 291, 296 (4th Cir. 2004)). In making this decision the court must accord "a defendant's solemn declarations in open court... 'a strong presumption of verity,'" White, 366 F.3d at 295 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)), "because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." Lemaster, 403 F.3d at 221 (citing United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003)). Consequently, "in the absence of

---

"even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 621 (1998). To overcome that default, Rocky Mountain must show cause and prejudice, or actual innocence. Id. at 622–23. It has not made that showing. However, the court does not rely on the existence of Rocky Mountain's procedural default in deciding this motion.

7

extraordinary circumstances. . . allegations. . . that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false,'" id. (citing Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975)), and the district court should dismiss them "without holding an evidentiary hearing." Lemaster, 403 F.3d at 222.

All the defendants' plea agreements were contingent upon all the defendants accepting them. Rocky Mountain maintains that inordinate pressure was placed upon Kenneth, its president, to instruct Rocky Mountain to plead guilty in order to spare Kenneth's mother. During the plea colloquy, all the defendants denied under oath that anyone had forced them to plead guilty or threatened them in any way, and all clearly expressed an understanding that they were waiving their rights to appeal and to collaterally attack their pleas and sentences. The court asked Kenneth at least five different times whether anyone had threatened him or forced him to plead guilty, and each time he indicated that he had not been threatened or coerced. The court's repeated inquiry was no mere formalism. The court was assuring itself that Kenneth's plea, as well as Rocky Mountain's plea, was being entered voluntarily. The court was cognizant of the potential pressures involved and recognized its responsibility to accept only pleas that were knowing, voluntary, and intelligent. Being satisfied that they were, the court accepted them. Under the circumstances, the court finds that Rocky Mountain voluntarily waived its right to collaterally attack its plea and sentence and dismisses its petition for writ of coram nobis because it is within the scope of that waiver.

### III.

Rocky Mountain maintains that its fine and agreed-upon forfeiture judgment exceed the

8

statutory maximums and are otherwise excessive. The court finds that, in addition to being within the scope of Rocky Mountain's collateral attack waiver as the court has already concluded, Rocky Mountain cannot maintain the claim here because coram nobis is not a substitute for appeal,[4] and is only available to raise claims involving error of the "most fundamental character." See Mandanisi, 205 F.3d at 524. The court concludes that Rocky Mountain's claim is not in reality a claim that the fine and forfeiture judgment are in excess of the respective statutory maximums, but rather is nothing more than a garden-variety challenge to the court's findings of fact that support those penalties.

"In federal courts the authority to grant a writ of *coram nobis* is conferred by the All Writs Act, which permits 'courts established by Act of Congress' to issue 'all writs necessary or appropriate in aid of their respective jurisdictions.'" United States v. Denedo, 129 S. Ct. 2213, 2221 (2009) (quoting the All Writs Act, 28 U.S.C. § 1651). The Act "is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Pa. Bureau of Corr. v. United States Marshal Serv., 474 U.S. 34, 43 (1985). The Act itself is not a font of jurisdiction. Denedo, 129 S. Ct. at 2222. Rather, coram nobis is "a step in a criminal case and not, like habeas corpus where relief is sought in a separate case and record,

---

[4] Strictly speaking, the court is not applying a procedural default rule, though it can discern no reason why it should not. Perhaps there are circumstances in which the miscarriage of justice exception to the procedural default rule should apply to a fine and excuse a procedural default. This is not one of them. Analytically, Rocky Mountain is not claiming that the statute will not support a fine of the magnitude the court imposed. Rather, Rocky Mountain is arguing that the court's factual findings to support the fine are erroneous. Though it cloaks its claim as a penalty in excess of the statutory maximum, it is at its core a challenge to the court's findings of fact.

9

the beginning of a separate civil proceeding." United States v. Morgan, 346 U.S. 502, 505 n.4 (1954).

The contours of coram nobis in a criminal case are subject to question. The writ was "traditionally available only to bring before the Court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before the verdict." Carlisle v. United States, 517 U.S. 416, 429 (1996) (quoting United States v. Mayer, 235 U.S. 55, 67–68 (1914)). The Supreme Court has stated that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." Carlisle, 517 U.S. at 429 (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947)).

Despite the Supreme Court's comments, however, "some federal courts have continued to assume that writs of coram nobis may correct errors of law as well as errors of fact." See United States v. Sawyer, 239 F.3d 31, 38 (1st Cir. 2001), and courts have found the writ available as an alternative to relief under 28 U.S.C. § 2255 when the defendant is no longer or never was held in custody, or is a corporation. See United States v. Rad-O-Lite of Phila., Inc., 612 F.2d 740, 744 (3d Cir. 1979); Polizzi v. United States, 550 F.2d 1133, 1135 (9th Cir. 1976); United States v. Allegheny Bottling Co., 854 F. Supp. 430, 434 (E.D. Va. 1994). But even when coram nobis is available for post-conviction relief, it is "'not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid.'" United States v. Mandanisi, 205 F.3d 519, 524 (2d Cir. 2000) (quoting Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996)); see also In re Hall, 2010 WL 3867069, at *1 (4th Cir. 2010) (citation omitted) ("A petition for writ of error coram

nobis . . . is not a substitute for direct appeal, and the writ will not lie where there is another adequate remedy available."); Taylor v. United States, 177 F.2d 194 (4th Cir. 1949).

From the above precepts, at least four requirements emerge as necessary to justify the issuance of a writ of coram nobis: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." See United States v. Mandel, 862 F.2d 1067, 1077 (4th Cir. 1988) (Hall, J., dissenting). Clearly, the $1,415,640 fine and $2,000,000 joint and several forfeiture judgment are sufficient adverse consequences to satisfy the case or controversy requirement of Article III (requirement 3), but Rocky Mountain has not satisfied the three remaining requirements.

A petitioner cannot forego an appeal because of the petitioner's prospective waiver or let the time to appeal run and claim that, consequently, only an extraordinary remedy is available. Therefore, Rocky Mountain cannot complain that a more usual remedy is not available (requirement 1).

Rocky Mountain's conviction became final on February 8, 2009, ten days after the court entered its judgment of conviction. Yet, Rocky Mountain did not file its current petition for fifteen months. It has offered no legitimate reason for waiting fifteen months before mounting this challenge (requirement 2).

Finally, the errors, despite their labeling, are not of a fundamental character justifying coram nobis. The second superseding indictment charges Rocky Mountain with conspiring with Vern, Darrell, Joyce, Kenneth, and others known and unknown to the grand jury to commit

11

offenses proscribed by 18 U.S.C. § 1957 in violation of 18 U.S.C. § 1956(h). That offense carries a maximum fine of $500,000 or, as an alternative, a fine of "not more than twice the amount of the criminally derived property involved . . . ." See §§ 1956(h) and 1957(a)(2). In an effort to position the claim as a fine in excess of the statutory maximum, Rocky Mountain argues that the overt acts listed in the second superseding indictment detail criminally derived property totaling only $382,390.32, and that the government is tethered to that amount. The argument is specious, however, because "in cases of conspiracy, it has never been held necessary to set forth the overt acts or means," United States v. Gooding, 25 U.S. 460, 475 (1827) (Story, J.), and "the government is not limited in its proof to establishing the overt acts specified in the indictment." United States v. Lewis, 759 F.2d 1316, 1344 (8th Cir. 1985). In any event, Rocky Mountain is not claiming that under the statute the court could not impose a $1,415,640 fine under any circumstances. Instead it is claiming the court could not impose this fine under the circumstances Rocky Mountain claims exist here. This argument is nothing more than an argument that the court's factual findings to support the fine are erroneous. Though it cloaks its claim as a penalty in excess of the statutory maximum, at its core, the claim is nothing more than a run of the mill challenge to the court's findings of fact. This is not error of a "fundamental character" necessary to the issuance of a writ of coram nobis (requirement 4).

For substantially the same or similar reasons, Rocky Mountain cannot challenge its agreed-upon joint and several $2,000,000 forfeiture judgment. More fundamentally, according to the joint stipulation of facts agreed to by Kenneth and Joyce, who were perfectly situated to know, "Rocky Mountain was created and maintained to launder the illegal proceeds from the sale of methamphetamine." (Statement of facts 4.) Kenneth agreed that the forfeiture "is

12

proportionate to the degree and nature of the offense committed by Rocky Mountain" and agreed and understood that the forfeiture was not "in lieu" of any other penalty the court might impose. It is not error of a "most fundamental character" to impose a forfeiture judgment in accordance with these stipulated and acknowledged facts.

## IV.

Rocky Mountain claims that it was denied the effective assistance of counsel in two ways. First, Rocky Mountain claims that its counsel, Gene Hart, had a conflict of interest which Hart failed to disclose to Rocky Mountain and that Hart's conflict adversely affected Hart's performance. Rocky Mountain (in reality, Kenneth) describes this alleged conflict as a "close association" between Hart and counsel for Kenneth's mother. Second, Rocky Mountain claims that had Hart conducted an adequate investigation, he would have learned that Kenneth's stipulation of facts on behalf of the corporation, namely that Rocky Mountain was created and maintained for money-laundering purposes, was inaccurate, thereby resulting in an impermissible and unjustifiable fine and forfeiture judgment. The court finds, however, that a corporation's Sixth Amendment right to counsel distills to two components: (1) its right to choose counsel it can afford, and (2) to the proscription of governmental interference or the application of rules that degrade counsel's effectiveness in ways the Constitution would not tolerate if an individual were charged with an offense. Rocky Mountain's Sixth Amendment allegations do not implicate either of these concerns. Accordingly, the court dismisses them on that ground. Alternatively, even if a corporation's right to counsel completely parallels an individual's right to counsel, Rocky Mountain's ineffective assistance claims lack merit under Strickland v. Washington, 466 U.S. 668 (1984) (Strickland).

A.

The rule the court follows may appear asymmetrical in the abstract in its differing treatment of individuals and corporations But this difference is justified when the underlying values of the Fifth and Sixth Amendments are accounted for in the rule's application. Clearly, each of those amendments applies to corporate defendants, but in different ways than they would apply to an individual. For example, a fundamental purpose of the Fifth and Sixth Amendments is to ensure individuals receive effective representation without regard to their ability to pay. See Argersinger v. Hamlin, 407 U.S. 25, 37 (1972) (guaranteeing Sixth Amendment right to counsel to states, through the Fourteenth Amendment, for indigent individuals facing petty offenses and misdemeanors that could result in deprivation of liberty). Yet, this essential purpose is not present when a corporation, rather than an individual, is the defendant. Accordingly, Congress has not provided for the expenditure of Criminal Justice Act funds for the defense of corporations. See United States v. Hartsell, 127 F.3d 343, 350 (4th Cir. 1997) (agreeing with the Ninth Circuit "that neither the Sixth Amendment to the United States Constitution nor the Criminal Justice Act [18 U.S.C. §3006A] provides that counsel must be appointed, at public expense, to represent a corporation in criminal proceedings.") Congress and the courts perceive little or no constitutional value to be served in providing counsel to an "indigent" corporation. Corporate welfare is hardly a fundamental value essential to our concept of ordered liberty. Thus, corporations have no Sixth Amendment right to appointed counsel.

For this reason, the corporation's right to counsel does not precisely mirror the individual's right to counsel. It follows that when we speak of the corporation's Sixth Amendment right to counsel, we in no way imply that it can have counsel it cannot afford.

Rather, what the corporation has is the right to retain the counsel of its choice to represent its interests without undo governmental intrusion. See United States v. Unimex, Inc., 991 F.2d 546, 550 (9th Cir. 1993) (under certain circumstances, pretrial seizure of corporate assets can violate corporation's Sixth Amendment right to obtain counsel with its own money). Thus, a corporation's Sixth Amendment right in a criminal trial is its right to retain counsel while an individual's Sixth Amendment right includes the right to appointed counsel. Unlike an individual, a corporation cannot have what it cannot afford.

Where there is a constitutional right to counsel, attorney error is imputed to the government. See Coleman v. Thompson, 501 U.S. 722, 754 (1991) (holding a petitioner cannot claim constitutionally ineffective assistance of counsel in a state post-conviction proceeding in which the petitioner lacked a constitutional right to an attorney in the first place). Where there is no constitutional right to counsel, however, a litigant bears the risk of that error. Id. In the latter case, it is not enough that "[counsel's] conduct would meet the Strickland standard," id. at 753, because the government "has no responsibility to ensure that the petitioner [is] represented by competent counsel." Id. at 754. A corporation that can be tried in a criminal case without counsel cannot raise the corollary claim that the counsel of its choosing failed to meet Strickland's standard for competence. In sharp contrast to its responsibility to an individual, the government has no responsibility to ensure that a corporation is represented by competent counsel. Consequently, corporate counsel's errors are not imputed to the government. Cf. id. at 752-54.[5]

---

[5] That ineffective assistance of counsel claims are barred where there is no constitutional right to appointed counsel is recognized in other proceedings. See, e.g., Rouse v. Lee, 339 F.3d 238, 250 (4th Cir. 2003) (recognizing that there is "no constitutional right to counsel in [a]

15

Although some other courts have disagreed,[6] the court sees no overarching Sixth Amendment purpose sufficient to charge the government with corporate counsel's ineffective representation, when that counsel was freely and independently chosen by the corporation. Consequently, the court dismisses Rocky Mountain's ineffective assistance claims on that ground. But even if the court were to conclude that a corporation's right to counsel parallels an individual's right to counsel in all material respects, for the reasons that follow, Rocky Mountain still would not prevail.

**B.**

An individual who seeks to prove ineffective assistance of counsel must first show deficient performance, that is, that counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687–91; see also Williams v. Taylor, 529 U.S. 362, 391–92 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. Strickland, 466 U.S. at 689. In addition to proving deficient performance, an individual asserting ineffective assistance must prove that he suffered prejudice. He must show there is a reasonable probability that, but for counsel's unprofessional

---

federal habeas [proceeding]" and therefore a petitioner cannot claim ineffective assistance of counsel); United States v. Allgood, 48 F. Supp. 2d 554, 559 (E.D. Va. 1999) ("Allgood's ineffective assistance of counsel claim fails because . . . there is no constitutional right to counsel in a probation violation hearing."); United States v. Drew, 2 F. Supp. 2d. 781, 783 (E.D. Va. 1998) ("Since defendant had no constitutional right to counsel on appeal from his revocation hearing, he could not be deprived of effective assistance by counsel's failure to file an appeal."). See also Bettis v. Roper, 14 F.3d 22, 24 (8th Cir. 1994) (declining to consider a prisoner's ineffective assistance of counsel claim where the prisoner was not "constitutionally entitled to representation" in a § 1983 claim).

[6] See Rad-O-Lite of Phila., Inc. 612 F.2d at 743 (corporate counsel's conflict of interest can deny a corporation its Sixth Amendment right to the effective assistance of counsel).

16

error, the outcome of the proceeding would have been different. Id. at 694.[7] In the context of a guilty plea, the analysis changes somewhat. While the first prong – the performance prong – remains the same, the prejudice question becomes whether "there is a reasonable probability that but for counsel's errors [the defendant] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The analysis of whether the defendant would have gone to trial is objective, not subjective. See Cooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988).

Rocky Mountain cannot satisfy Strickland's two prongs as to either of its ineffective assistance claims. Rocky Mountain's conflict of interest claim is especially hollow.[8] Rocky Mountain complains that its counsel was laboring under a conflict of interest that was "unknown" to the corporation – a close association with Joyce Crawford's counsel. But Rocky Mountain is a closely held corporation and Joyce is a fifty percent shareholder and a corporate officer. It is pure sophistry for Rocky Mountain to claim that it did not know of this conjured "conflict" or even to suggest that it was a conflict and an ethical lapse. Consequently, the claim does not satisfy Strickland's performance prong.

The claim also fails under Strickland's prejudice prong. Rocky Mountain cannot show

---

[7] Fields v. Attorney Gen. of the State of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) ("These two components are typically referred to as the 'performance' and 'prejudice' components.").

[8] Rocky Mountain complains that it "was never informed that counsel who entered a guilty plea on behalf of [Rocky Mountain] was in fact closely associated with counsel for Joyce Crawford." (Pet. 9.) It also notes its "understanding" that Joyce Crawford's counsel compensated Rocky Mountain's counsel "directly," (id.) and that Kenneth (a fifty percent owner of Rocky Mountain's stock and its corporate president who with Joyce's concurrence authorized Rocky Mountain's counsel to enter its plea) did not pay Rocky Mountain's counsel. Of course, Joyce owned fifty percent of Rocky Mountain's stock and was the corporation's secretary.

17

that, but for its counsel's alleged conflict of interest, it would have insisted on going to trial rather than pleading guilty pursuant to the plea agreement it entered. As noted, Rocky Mountain is wholly owned, controlled and directed by its officers, Joyce and Kenneth. Though, as a legal fiction, it is separate from its owner/officer/directors, the corporation is not operating in a fictional world where it is divorced from their ownership, control, and decision-making. Rocky Mountain, as a closely held corporation, is Joyce's and Kenneth's property to be disposed of as they wish. It is their property and nothing more. Joyce and Kenneth entered into pleas of guilty in which they acknowledged that Rocky Mountain operated as a sham, laundering drug proceeds. Joyce and Kenneth jointly decided to plead the corporation guilty, and both fully understood the consequences. No one was in a better position to understand the unlawful ways in which they had utilized the corporation than they were. Under the circumstances, there is not a reasonable probability that but for its counsel's alleged conflict of interest, Rocky Mountain would have insisted on going to trial rather than pleading guilty pursuant to the plea agreement it entered. Accordingly, the claim does not satisfy Strickland's prejudice prong.

Rocky Mountain's second ineffective assistance claim distills to essentially this: had Hart conducted an adequate investigation, he would have learned that Kenneth's stipulation of facts on behalf of the corporation, admitting that Rocky Mountain was created and maintained for money-laundering purposes, was inaccurate, thereby resulting in an impermissible and unjustifiable fine and forfeiture judgment. As the court noted in rejecting Rocky Mountain's conflict of interest/ineffective assistance claim, no one was in a better position to understand the unlawful ways in which Joyce and Kenneth utilized the corporation than Joyce and Kenneth. Rocky Mountain's counsel was entitled to rely upon their factual acknowledgments and

18

representations based upon their personal knowledge as that corporation's only officers and shareholders. Accordingly, the claim does not satisfy Strickland's prejudice prong for precisely the same reasons that its conflict of interest ineffective assistance claim fails to satisfy that prong.

Consequently, the court will dismiss Rocky Mountain's ineffective assistance claims.

V.

For the foregoing reasons, the court dismisses Rocky Mount's petition for writ of coram nobis.

**ENTER**: This October 27, 2010.

_____
UNITED STATES DISTRICT JUDGE